## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINA MICHELLE BROCK, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 1:20 CV 232 SRW |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 17. Defendant filed a Brief in Support of the Answer. ECF No. 24. Plaintiff filed a Reply. ECF No. 25. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

## I.     Factual and Procedural Background

On June 18, 2018 and June 28, 2018, Plaintiff Christina Brock protectively filed an application for disability insurance benefits (DIB) under Title II, 42 U.S.C. §§ 401, *et seq*. and an

---

[1] At the time this case was filed, Andrew M. Saul was the Commissioner of Social Security. Kilolo Kijakazi became the Commissioner of Social Security on July 9, 2021. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name, and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Kilolo Kijakazi for Andrew M. Saul in this matter.

application for supplemental security income (SSI) under Title XVI, 42 U.S.C. §§ 1381, *et seq*. Tr. 191-98.[2] Plaintiff's application was denied on initial consideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 124-29, 132-33.

Plaintiff and counsel appeared for a hearing on October 25, 2019. Tr. 38-69. Plaintiff testified concerning her disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from vocational expert Darrell W. Taylor, Ph.D. *Id*. On January 24, 2020, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 14-37. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 187-90. On September 8, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.    Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

---

[2] Plaintiff previously filed applications for DIB and SSI with an alleged onset date of November 7, 2007. Tr.73-83. After being denied initial consideration, an Administrative Law Judge determined Plaintiff was not under a disability within the meaning of the Social Security Act from her alleged onset date to October 27, 2009. *Id.*

any other kind of substantial gainful work which exists in the national economy[.]" §

1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the

claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the

claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is

not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see whether the claimant has a severe impairment "which significantly limits claimant's

physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th

Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts

only to a slight abnormality that would not significantly limit the claimant's physical or mental

ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also*

20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the

impairment's medical severity. If the impairment meets or equals one of the presumptively

disabling impairments listed in the regulations, the claimant is considered disabled, regardless of

age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the

presumptively disabling impairments, the Commissioner assesses whether the claimant retains

the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§

416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do

despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir.

2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant

evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## III.   The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 28, 2016, the alleged onset date. Tr. 19. Plaintiff has the severe impairments of "degenerative disc disease, diabetes mellitus, obesity, neuropathy and chronic metatarsalgia and capsulitis in the feet, bipolar disorder, borderline personality disorder, [and] generalized anxiety disorder." Tr. 19-21. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 21-24. The ALJ found Plaintiff has the following RFC through the date last insured:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the [Plaintiff] can lift no more than 10 pounds at a time, and occasionally lift or carry items 10 pounds or less. The [Plaintiff] can stand or walk for a total of two hours in an eight-hour workday, and can sit for a total of six hours in an eight-hour workday. The [Plaintiff] can never climb ladders, ropes, or scaffolds, can occasionally climb ramps or stairs, and occasionally balance, stoop, kneel, crouch, and crawl. The [Plaintiff] can perform no overhead tasks, and can frequently reach (except for overhead), and frequently

> handle, finger, and feel with dominant right upper extremity. The [Plaintiff] needs an indoor temperature-controlled work environment. The [Plaintiff] can perform simple, routine tasks that involve working primarily with things and that can be performed independently, and beyond that, after any initial training period interaction with coworkers and supervisors must be occasional at maximum, and superficial in nature, meaning no mediation, arbitration, negotiation, or confrontation of others or supervision of others. The [Plaintiff] can have no direct interaction with the general public.

Tr. 24-31. The ALJ found Plaintiff is unable to perform any past relevant work as a preparation cook, cashier, cook, laborer or machine operator. Tr. 31-32.

The ALJ further found Plaintiff was born on August 21, 1987 and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. Tr. 32. Plaintiff has at least a high school education and is able to communicate in English. *Id*. The ALJ determined the transferability of job skills is not material to the determination of disability because, using the Medical-Vocational Rules as a framework, it supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. *Id*.

Relying on the testimony of the VE and considering Plaintiff's age, education, work experience and RFC, the ALJ found there are jobs existing in significant numbers in the national economy which the Plaintiff can perform, including representative occupations such as production worker (*Dictionary of Occupational Titles* ("*DOT*") No. 739.687-066); hand packer (*DOT* No. 559.687-016); and inspector/tester/sorter (*DOT* No. 521.687-086). Tr. 32-33. The ALJ concluded Plaintiff was not under a disability from December 28, 2016, through the date of his decision on January 24, 2020. Tr. 33.

## IV.    Discussion

Plaintiff challenges her mental RFC only, arguing the ALJ erred by failing to include limitations regarding her ability to adapt and manage herself. Plaintiff does not dispute the ALJ's formulation of her physical RFC. Although the Court has reviewed the underlying administrative

record in its entirety, the Court will limit its discussion of the evidence to Plaintiff's mental

impairments. *See, e.g., Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010)

(noting plaintiff's failure to raise specific claims in a social security brief constitutes a waiver of

any such unaddressed claims).

The ALJ determined Plaintiff had the mental impairments of bipolar disorder, borderline

personality disorder, and generalized anxiety disorder. Tr. 20. To account for the symptoms

related to these impairments, the ALJ limited Plaintiff to performing simple, routine tasks which

involved "working primarily with things and that can be performed independently." Tr. 25. The

ALJ further restricted her to occasional and superficial interaction "at maximum" with coworkers

and supervisors, and no direct interaction with the general public. *Id.* The ALJ further indicated

she would be unable to participate in activities involving mediation, arbitration, negotiation, or

the confrontation or supervision of others. *Id.*

The ALJ first considered Plaintiff's hearing testimony related to her mental impairments.

Tr. 25. Plaintiff stated she would throw things and attempt to hurt others when she was very

angry, experienced suicide ideations which were not intense, and had a history of confrontations

with coworkers. Tr. 25, 54-55. At the time of the hearing, she was enrolled in a GED program,

and reported it would take her an entire day to complete an assignment which would take her

classmates one or two hours. Tr. 56-57. She further testified to experiencing issues with sleep

and a racing mind. Tr. 58-59. Plaintiff stated that on somedays she could not drive, but told the

ALJ she drove to the hearing. Tr. 25, 60.

The ALJ determined her "statements concerning the intensity, persistence and limiting

effects of [her] symptoms [were] not entirely consistent with the medical evidence and other

evidence in the record." Tr. 25-26. Specifically, the ALJ found that "[a]lthough she did report

mental health symptoms and certainly demonstrated deficits in some mental areas of functioning, she demonstrated only mild to moderate mental limitations, and she often had mostly normal mental statuses." Tr. 26.

The ALJ then summarized Plaintiff's medical history in a detailed seventeen-page opinion. Saint Francois Medical Center treatment notes from April 24, 2017, described Plaintiff as having a normal mood and affect, behavior, judgment, and thought content. Tr. 26, 308. On August 28, 2017, Plaintiff reported she was "getting more energy, becoming more active" and planned a vacation requiring air travel. Tr. 28, 362. On June 27, 2018, Plaintiff was again described as having a normal mood and affect. Tr. 26, 411.

On August 21, 2018, Plaintiff underwent a Mental Diagnostic Evaluation by consultative examiner, Dr. Jerry L. Cunningham, Psy.D. Tr. 20, 425-35. Plaintiff reported she had never been admitted into a psychiatric hospital and participated in therapy sessions only a couple of times. Tr. 425-26. Plaintiff stated she had increased depression when not on medication. *Id.* Plaintiff confirmed she could perform household chores, cook and prepare meals, shop autonomously, manage money effectively, and communicate adequately. Tr. 427. She explained she did not participate in social activities due to her tendency to get easily aggravated, and reported she was previously arrested for fighting. *Id.* Plaintiff admitted to drug and alcohol use, and stated she "will drink 4-5 days a week and will have as many as she feels like she wants." Tr. 428. Plaintiff drove to the examination with no issues finding the location, appeared with adequate hygiene, was dressed appropriately, had a euthymic mood, and was cooperative. *Id.*

Upon examination, Plaintiff was able to relay personal information, such as her phone number, date of birth, and social security number. Tr. 26, 428-30. She recalled all five words during a memory test, and three out of five words on the second pass. *Id.* She correctly repeated

8

one out of two sentences, made no errors when asked to read a list of letters, and could tap her hand when she read the letter "A." *Id.* Although she exhibited moderate problems reading a sixth-grade level paragraph, she had no issues with comprehension. *Id.* She had some trouble with simple math problems, but could correctly calculate money. *Id.*

Dr. Cunningham opined that Plaintiff met the criteria for Moderate to Severe Bipolar I Disorder, Most Recent Episode Manic, with Anxious Distress; Borderline Personality Disorder; Severe Alcohol Use Disorder; and Borderline Intellectual Functioning. Tr. 431-32. Dr. Cunningham did not, however, believe she was functioning within or near the intellectual disability range. *Id*. Dr. Cunningham wrote:

> Christina has no problems understanding or remembering simple instructions; no problems carrying out simple instructions; and no problems with the ability to make judgement on simple work-related decisions. She may have some mild problems understanding and remembering complex instructions; carrying out complex instructions; and making judgment on complex work-related decisions. Overall, she does have the capacity to complete most work-like tasks within an acceptable timeframe.
>
> Christina has moderate to marked problems interacting appropriately with [the] public due to Bipolar Disorder symptoms, Borderline Personality Disorder symptoms and impulsivity and anger issues. She reported in previous work experience that she did get along with most co-workers but did not get along with some supervisors because she stated she is very opinionated and will tell people what she thinks. Based on her presentation and the reports of her symptoms in this session[,] I believe that Christina would have at minim[um] moderate problems interacting with supervisors. She would have significant problems responding to usual work situations and to changes in routine work settings due to her unstable anger issues.

Tr. 432.

The ALJ found Dr. Cunningham's opinion to be somewhat persuasive, noting it was "largely supported by [his] examination findings." Tr. 31. The ALJ disagreed, however, with Dr. Cunningham's "finding that her anger issues would interfere with her work" because such a conclusion was "not consistent with the examination or the record as a whole, as there [were]

little mentions of the claimant having angry outbursts[.]" *Id.* The ALJ cited to contrary records within the medical evidence reflecting "she was often described as cooperative, and as having a normal mood and affect[.]" *Id.*

On September 5, 2018, Plaintiff was assessed by State agency consultant, James Morgan, Ph.D. Tr. 30, 92-93, 97-99, 110-12, 116-18. Dr. Morgan opined that Plaintiff had mild limitations in her ability to understand, remember or apply information, and to concentrate, persist, or maintain pace. Tr. 92. He further opined Plaintiff had moderate limitations in her ability to interact with others, and adapt or manage herself. *Id.* The ALJ found this opinion somewhat persuasive because "the evidence support[ed] more restrictive findings with understanding, remembering, or applying information." Tr. 30.

On October 13, 2018, Plaintiff appeared for a consultative examination with Nurse Practitioner Christy Murphy. Tr. 26, 436-42. Plaintiff was described to be in no distress, alert with good eye contact, appropriate mood, clear thought process, fluent speech, and fully oriented. Tr. 438. Upon a neurologic examination, she was found to have normal memory and good concentration. *Id.*

During a January 23, 2019 visit with her primary care physician, Dr. Richard Hester, he noted Plaintiff was keeping a journal to track her physical and mental symptoms. Tr. 27, 641. Dr. Hester reviewed her journal, and noted in his treatment notes that she indicated "few mental health symptoms[.]" *Id.* On January 23, 2019, Dr. Hester completed a Physical Medical Source Statement, which the ALJ found unpersuasive. Tr. 30, 483-86. Dr. Hester did not, however, complete a Mental Medical Source Statement. Because Plaintiff is only challenging the ALJ's formulation of her mental RFC, the Court will not summarize Dr. Hester's opinions here as they are solely related to her physical impairments.

10

On March 28, 2019, a mental status examination was performed by Plaintiff's clinical psychologist, Amber Richardson, Ph.D., at Missouri Highlands Medical Clinic ("MHMC"). Tr. 20, 636-38. Plaintiff scored a 24 out of 30, which was in the "mild neurocognitive disorder range." Tr. 20, 638. On April 28, 2019, Plaintiff returned to MHMC for a follow up appointment. Tr. 20, 628-31. Plaintiff was described to have "tangential thought processes," and it was suspected she might have "prolonged mania" due to her poor sleep schedule. Tr. 631. During this visit, Dr. Hester discussed modifying her dosage of Abilify and "[e]ncouraged her to again plan to go to bed at a defined time each evening and turn off all lights and electronic devices at that time." *Id.*

The ALJ noted that despite her self-reported issues with sleep, the majority of treatment notes did not describe her to exhibit significant fatigue. Tr. 20, 350 (denied fatigue), 362 (denied fatigue), 383 (denied fatigue), 395 (denied fatigue), 489 (denied insomnia), 530 (described as alert and oriented), 543 (denied fatigue), 550 (denied fatigue), 591 (denied fatigue), 650 (described as alert and oriented). The ALJ determined her sleep issues were treated conservatively through medication, utilization of a sleep log, and adherence to a regular bedtime schedule. Tr. 20.

On September 17, 2019, Dr. Hester's treatment notes described Plaintiff as exhibiting good judgment, normal mood and affect, full orientation, and alertness. Tr. 27, 591. On July 24, 2019 and July 31, 2019, Dr. Richardson indicated Plaintiff was able to follow instructions in keeping a detailed sleep log, which he reviewed on both visits. Tr. 27, 617, 622. On September 29, 2019, Plaintiff appeared to her podiatrist, Dr. Jeff Baller, for a neuropathy follow up appointment. Tr. 27, 648-51. Upon physical examination, Dr. Baller described Plaintiff to be

"alert and oriented x3 with mood and affect . . . appropriate to situation and in no apparent distress. Tr. 650.

The ALJ determined Plaintiff had moderate limitations in her ability to understand, remember or apply information. Tr. 22. In support, the ALJ cited to Plaintiff's Function Report which stated she could prepare meals, pay bills, shop, and drive; her hearing testimony in which she was able to recall and describe her prior work history; Dr. Cunningham's examination confirming Plaintiff's ability to drive, recall and comprehend general information, and correctly calculate money and change; as well as Nurse Practitioner Murphy's assessment that Plaintiff exhibited good concentration and normal memory. Tr. 22, 242-53, 427-32, 438. The ALJ also found it relevant that Plaintiff had the ability to keep a detailed sleep log as instructed by her treating physician. Tr. 22, 617, 622.

The ALJ determined Plaintiff had moderate limitations in her ability to interact with others despite her testimony that she throws items at others to try to hurt them, and has a history of confrontations with her coworkers. Tr. 23. The ALJ found these statements to be inconsistent with her reports to Dr. Cunningham in which she described a history of getting along with coworkers, as well as her Function Report indicating her participation in social activities such as BBQs, float trips, and bonfires; playing board games and video games; and attending GED classes. Tr. 23, 247, 432. The underlying record also evidenced her ability to go to public places such as the gym, Tr. 336, and attend an out-of-town wedding requiring air travel, Tr. 601. The ALJ further cited to treatment notes describing Plaintiff as having good eye contact, conversational speech, and active cooperation with her treating providers and consultative examiners. Tr. 23, 326-38, 402, 408, 428, 438-39, 565, 574.

12

The ALJ determined Plaintiff had mild limitations in her ability to concentrate, persist, or maintain pace. The ALJ noted on December 20, 2018, she appeared to Dr. Hester who found her to exhibit circumstantial thought, but it was attributed to her pharmacy's error in providing her with a fifteen-day supply of Abilify. Tr. 23, 643. The ALJ again referred to her ability to drive, prepare meals, play games, and manage funds, as well as her December 2018 consultative examination where she was described as having good concentration and normal memory. Tr. 23.

Lastly, the ALJ determined Plaintiff had mild limitations in her ability to adapt and manage herself. In support, the ALJ cited to her Function Report in which she indicated she does not require reminders to take care of her personal needs and grooming, and noted that any issues in maintaining her personal care were related to physical, not mental, impairments. Tr. 23, 244-45. The ALJ further considered her ability to prepare meals, do laundry, clean the bathroom, drive, shop, pay bills, handle money, draw, color, plant flowers, swim, paint, and participate in social activities. Tr. 245-47. The ALJ also cited to portions of the record documenting Plaintiff's ability to focus on her schoolwork, and medical professional observations indicating she had appropriate grooming and hygiene, normal mood and affect, and normal behavior and judgment. Tr. 23, 308, 316, 325, 403-04, 407, 411, 427-28, 432, 473, 476, 481, 489, 530, 534, 566, 570, 578, 584, 591, 650, 653. The ALJ found it notable that during her August 2018 consultative examination, Plaintiff denied suicidal ideations, auditory or visual hallucinations, was not tangential in conversation, and was able to sit still, until she started discussing her inability to sit still, at which time she began turning back and forth in her seat. Tr. 24, 428.

Plaintiff argues the ALJ failed to properly consider her ability to adapt and manage herself when he formulated her mental RFC and should have included additional limitations. ECF No. 17 at 2. Plaintiff points to her hearing testimony in which she described her propensity

to throw things, argue with coworkers, and not get along with others, in addition to her difficulties focusing and concentrating. Plaintiff highlighted that her treating physicians did not question her reports of mental health issues, and medication adjustments were sometimes needed. Plaintiff also cites to the medical record where she once reported a "dramatic mood change" to Dr. Richardson, and she complained of various mental health issues to Dr. Cunningham and Dr. Morgan. As a result of her subjective reports of metal health symptoms, Plaintiff argues the ALJ should have found the opinions of Dr. Cunningham and Dr. Morgan to be more persuasive. Plaintiff further contends the ALJ inappropriately discounted her subjective reports without citing to evidence contradicting her statements.

In response, the Commissioner asserts the ALJ formulated an appropriate mental RFC based on the fact that Plaintiff sought no significant treatment from a mental health professional, and the objective medical findings did not demonstrate disabling restrictions of mental functioning. ECF No. 24. The Commissioner asserts the ALJ appropriately summarized numerous treatment notes describing her as exhibiting a normal mood, affect, behavior, judgment, and thought content, as well as cooperative and friendly. The Commissioner further highlights that the ALJ considered her ability to take care of her own personal hygiene, perform chores, go shopping, manage money, communicate adequately, travel in an airplane, attend a wedding, and participate in social activities.

After careful consideration and review of the medical records, the ALJ's opinion, and the parties' briefings, the Court cannot agree with Plaintiff's arguments. To the contrary, substantial evidence supports the ALJ's conclusion that Plaintiff had mild limitations in her ability to adapt and manage herself, and appropriately limited her to occasional and superficial interaction "at

maximum" with coworkers and supervisors, and no direct interaction with the general public. Tr. 25.

The relevant Social Security regulation defines the "ability to manage oneself" as follows:

> This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

20 C.F.R., Part 404, Subpart P, Appendix 1, 12.00 (E)(4).

Dr. Morgan determined Plaintiff had moderate limitations in adapting or managing herself. Tr. 92-99. The ALJ found Dr. Morgan somewhat persuasive with respect to his other opinions regarding Plaintiff's understanding, remembering, or applying information. Tr. 30. Dr. Cunningham opined Plaintiff had "significant problems responding to usual work situations and to changes in routine work setting due to her unstable anger issues." Tr. 432. The ALJ found Dr. Cunningham's opinion inconsistent with the doctor's own examination and the record as a whole because there were minimal mentions of Plaintiff exhibiting angry outbursts during the relevant period. Thus, the ALJ concluded Plaintiff had only mild limitations in her ability to adapt or manage herself. Tr. 31.

The ALJ explicitly acknowledged Plaintiff's subjective reports of anger and aggression, but found it significant that her mental status examinations were, on the whole, normal. For example, although she testified to having "anger outbursts" every other day, Tr. 53-54, she was always described as cooperative during visits with treating and consulting physicians. Tr. 327-

28, 402, 408, 428, 439, 565, 574. Psychiatric examinations consistently observed her as having normal mood, affect, behavior, and thought content. Tr. 316, 325, 403, 404, 407, 411, 473, 476, 481, 489, 566, 570, 578, 584, 591, 653. Plaintiff was regularly described as well-groomed with good hygiene. Tr. 23, 26, 428, 460, 650, 653. Although Plaintiff testified at her hearing she did not get along with co-workers in the past, the ALJ correctly noted such testimony was contradicted by her report to Dr. Cunningham, in which she affirmatively stated that she did get along with most coworkers, but she did not get along with some supervisors. Tr. 23 (compare Tr. 55 to Tr. 427).

To further assess Plaintiff's ability to adapt or manage herself, the ALJ appropriately considered her activities of daily living, in which she was able to perform household chores, go out alone, drive when needed, shop, manage her finances, attend an out-of-town wedding requiring air travel, attend GED classes, and participate in social activities. Tr. 22-23. The ALJ also considered she was never admitted to in-patient psychological treatment and participated in therapy sessions only a couple of times. Tr. 26, 426. Notably, Plaintiff reported to Dr. Cunningham that when she did attend the few therapy sessions, her counselors informed her she did not need to return. Tr. 426. There are no treatment notes from her therapy appointments within the record. Tr. 426. Although an individual can still have a severe mental impairment without being hospitalized, a lack of documented hospitalization or therapy weighs against finding severe mental impairments. *See Derryberry v. Berryhill*, Case No. 1:15-CV-3-JAR, 2017 WL 1194458, at *6 (E.D. Mo. Mar. 30, 2017) (noting a lack of hospitalization for psychiatric treatment supports finding non-severe mental impairments).

Plaintiff told Dr. Cunningham her mood stabilizer, Abilify, did not cause any side effects. Tr. 426. On November 20, 2018, Plaintiff told Dr. Hester that "Abilify was helpful when she was

16

taking it consistently." Tr. 646. She indicated any non-compliance was due to the cost of the prescription. *Id.* Dr. Hester advised her to use *Good RX*, which would reduce the price of Abilify by half, and Plaintiff stated the new price would "help her be more compliant." *Id.* No further compliance issues were indicated in the record. To the extent that her mental impairments were controlled by medication, they cannot support a finding of disability. *See Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling") (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)).

Plaintiff primarily supports her request for remand by citing to records indicating a different conclusion could have been reached as to her ability to adapt or manage herself. This evidence is not, however, so overwhelming as to negate the substantial, contrary evidence the ALJ relied upon in forming his decision. It is not the province of this Court to re-weigh the evidence as it existed before the ALJ. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (stating as long as there is substantial evidence in the record, the ALJ's decision will be upheld even if substantial evidence exists adverse to the ALJ's findings); *see also Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) (RFC was appropriate, despite plaintiff's ability to point to contrary evidence in the record, where "good reasons and substantial evidence on the record as a whole" supported ALJ's conclusions).

Plaintiff also argues this matter should be remanded because the ALJ did not properly evaluate her subjective complaints. When evaluating subjective complaints, the ALJ "must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." *Schwandt v. Berryhill*, 926 F.3d 1004,

1012 (8th Cir. 2019) (citations omitted); *see also* 20 C.F.R. § 416.929(c)(3). The "ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citation omitted).

In this matter, as discussed above, the ALJ considered the majority of these factors and determined the objective medical evidence and findings, conservative treatment with medication, lack of in-patient hospitalization, minimal therapy sessions, and ability to maintain daily activities of living, did not support the level of mental limitations alleged by Plaintiff. The ALJ's decision is supported by substantial evidence in the record as a whole. Again, where substantial evidence supports the Commissioner's decision, it may not be reversed merely because substantial evidence may support a different outcome. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (citing *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992)).

**IT IS HEREBY ORDERED** the decision of the Commissioner is **AFFIRMED**, and Plaintiff Christina Michelle Brock's Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** the Clerk of Court shall substitute Kilolo Kijakazi for Andrew M. Saul in the court record of this case.

So Ordered this 13th day of October, 2021.

*/s/ Stephen R. Welby*
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE